OPINION OF THE COURT
 

 Chief Judge Wachtler.
 

 This appeal presents two issues regarding the petitioners’ request for the return of property owned by them and held by respondent property clerk: whether, under the expedited procedure for the return of such property set forth in the unpublished order in
 
 McClendon v Rosetti
 
 (US Dist Ct, SD NY, July 15, 1974, Lasker, J., 70 Civ 3851) petitioners’ demand was (1) timely, and (2) sufficient. Although petitioners did not comply with all procedural steps that a strict reading of the
 
 McClendon
 
 order would seem to require, for the reasons that follow we conclude that petitioners’ demand should have been honored.
 

 The
 
 McClendon
 
 procedure stems from a 1972 decision of the United States Court of Appeals for the Second Circuit
 
 (McClendon v Rosetti,
 
 460 F2d 111), which held that former section 435-4.0 (now § 14-140) of the Administrative Code of the City of New York establishing the office of property clerk violated due process in certain respects concerning the handling and disposition of property by that official. The challenged section provided (and still provides) that property seized by the police is to be placed in the custody of the property clerk, who is authorized to dispose of such property if it remains in his custody for three months "without a lawful claimant entitled thereto”. Moneys are to be deposited into the Police Pension Fund. Other property is sold at public auction and the proceeds are deposited in the Police Pension Fund.
 
 [1]
 
 Under the Administrative Code, a claimant seeking
 
 *53
 
 return of property in any action or proceeding against the property clerk bears the burden of establishing lawful title and that the property or money was held and used in a lawful manner.
 

 The Second Circuit held that this scheme violated due process "as applied to persons from whose possession money or property, other than contraband, has been taken or obtained, though such money or property was not related to any criminal proceeding, or, if it was so related, such criminal proceedings had been terminated, or if the money or property had been needed as evidence in a criminal proceeding, it was no longer needed for that purpose” (460 F2d, at 116). In particular, the court condemned the notion that the government could seize noncontraband property and require, as a condition of its return, that the person from whom it was seized be able to prove lawful title in a civil action (see,
 
 id.,
 
 at 115-116). The court remanded the case to the District Court to formulate appropriate injunctive relief to avoid perpetuation of the unconstitutional practices and procedures authorized by the Administrative Code.
 

 On remand, the District Court construed the Second Circuit’s decision as requiring that in the circumstances described in that decision (i.e., where the property is unrelated to a criminal proceeding, the criminal proceeding is terminated, or the property is not needed), the property clerk must initiate a forfeiture or other proceeding to justify the continued detention of the property
 
 (McClendon v Rosetti,
 
 369 F Supp 1391 [SD NY]). The District Court’s decision resulted in an order, submitted by the plaintiffs in that case, setting forth the procedure to be followed in the future — the procedure at issue in the present appeal.
 

 The
 
 McClendon
 
 order requires that when money or property is taken from an arrested person a voucher will be issued listing the seized items together with a notice that to obtain the return of the items, the person must submit the voucher, identification and a District Attorney’s release to the property clerk. The notice is to further state that the property clerk may dispose of the money or property as provided by law if a claimant does not demand the property within 90 days after the termination of criminal proceedings or within 90 days after the issuance of a District Attorney’s release, whichever is sooner. The order further provides that the property clerk must return the property to the claimant if a timely demand
 
 *54
 
 is made and the claimant submits the voucher and a District Attorney’s release unless, within 10 days thereafter, the property clerk initiates a forfeiture or similar proceeding in which the State bears the burden of proving that it is legally justified in continuing to detain the money or property. A demand is timely if made within the 90-day period set forth in the notice.
 

 The question in the present case is whether the property clerk should have honored a demand made without a District Attorney’s release and more than seven months after the 90-day period expired. In the circumstances of this case, we conclude that the property clerk should have returned the property notwithstanding these procedural irregularities. Those circumstances are as follows.
 

 Petitioners were arrested in July 1985 and charged with possession of stolen property. A number of valuable items were seized from petitioners’ place of business pursuant to a search warrant, including jewelry, silver bars, silver coins and currency. Two walkie-talkies had been seized by police several days earlier. The items were vouchered and placed in the custody of the property clerk. During the pendency of the criminal proceeding, petitioners’ attorney made several requests for the return of various business documents and any property not considered to be stolen, including a request to the Assistant District Attorney in charge of the case and a motion addressed to the criminal court. These efforts were unavailing.
 

 On August 17, 1987, petitioner Lopes pleaded guilty to one count of criminal possession of stolen property in the third degree. On September 14, 1987, petitioner DeBellis entered an identical plea. It is undisputed and the plea colloquies indicate that the guilty pleas related to possession of the walkie-talkies only and were in satisfaction of all charges then pending against petitioners. Petitioner Lopes was sentenced on September 30, 1987 and petitioner DeBellis was sentenced on October 23, 1987. Each was sentenced to a fine of $1,000. Between the two sentencing dates, by letter dated October 20, 1987, petitioners’ attorney, then apparently representing only DeBellis, made a "formed demand” upon the property clerk for the release of the property, noting that DeBellis had earlier visited the property clerk and requested the return of the property, but his request had been refused on the ground that the property was subject to a Federal tax levy.
 

 
 *55
 
 On September 1, 1988, petitioners secured releases of the levy from the IRS and, on the same day, DeBellis presented the release to the property clerk and demanded the return of the property. The property clerk refused and issued to DeBellis a form acknowledging the demand and containing boilerplate language that the request was being referred to the Legal Bureau of the Police Department to consider whether to institute a forfeiture proceeding. By letter dated September 29, 1988, the Legal Bureau notified petitioners’ attorney that the demand was to be denied because it was untimely and noting further that a District Attorney’s release had not yet been obtained.
 

 Petitioners’ attorney then attempted to secure a release from the District Attorney, who indicated that a release would be issued if proof of ownership were supplied. In an attempt to meet this requirement, on December 7, 1988, petitioners’ attorney submitted to the District Attorney various invoices and requested release of the property. Receiving no response, petitioners commenced this proceeding seeking a court order directing the property clerk to return the property to them.
 

 Supreme Court granted the petition, concluding that petitioners were entitled to the return of the property because they had made an "appropriate” demand for the return of the property and respondents had not commenced a forfeiture proceeding. The Appellate Division affirmed, holding that petitioners’ initial demand was timely and that the property therefore should have been released upon satisfaction of the tax levy. In addition, the court held, relying upon
 
 Moreno v City of New York
 
 (69 NY2d 432), that a demand need not be accompanied by a District Attorney’s release.
 
 [2]
 

 On appeal, respondents’ argue that petitioners’ demand was properly rejected by the property clerk for three reasons: (1) it was untimely; (2) it was improper because it was not accompanied by a District Attorney’s release; (3) petitioners had agreed as part of their plea agreement that the property would not be returned unless they could submit proof of ownership satisfactory to the District Attorney.
 

 With respect to timeliness, respondents argue first that the demand made by petitioners’ attorney by letter dated October
 
 *56
 
 20, 1987, and the one made in person by petitioner DeBellis some time earlier were both premature because they were made before DeBellis was sentenced on October 23, 1987. They contend that, under
 
 McClendon,
 
 a demand must be made within 90 days after the termination of the criminal proceeding, unless the District Attorney releases the property at an earlier stage, and that the criminal proceeding did not terminate until sentencing. Respondents further contend that the demand made in September 1988, after satisfaction of the tax levy, was made well beyond the 90-day limit.
 

 We agree with respondents that the criminal proceedings did not terminate with petitioners’ guilty pleas and that, therefore, the demand made on behalf of petitioner DeBellis before his sentencing was premature. Although the
 
 McClendon
 
 order does not specify which event, the plea or the sentencing, constitutes the "termination of criminal proceedings”, CPL 1.20 (18) provides that a criminal proceeding "means any proceeding which * * * constitutes a part of a criminal action” and CPL 1.20 (16) provides that a criminal action "terminates with the imposition of sentence or some other final disposition in a criminal court of the last accusatory instrument filed in the case.” Thus, respondents’ position is consistent with the CPL.
 

 In addition, especially if the seized property is related to the criminal proceedings, there may be valid reasons not to release the property until after sentencing — it may form the basis for a restitutionary component of a sentence, for example. Furthermore, inasmuch as a successful appeal might require use of the seized property as evidence in a trial or retrial, as the case may be, the property clerk should not be required to release property — where the predicate for release is termination of the criminal proceedings — until direct appeals have been exhausted or the time to take a direct appeal has expired, 30 days after sentencing (CPL 460.10 [1] [a]). A release from the District Attorney certifying that the property can be returned to its owner would, of course, negate any such justification for continued detention of the property and would obligate the property clerk to return the property immediately unless a timely forfeiture proceeding is instituted.
 

 Although for these reasons we agree with respondents that petitioners’ initial demands were premature and it is clear that their subsequent demand, following satisfaction of the tax levy, came several months after expiration of the 90-day
 
 *57
 
 period, we conclude that these deficiencies are not fatal to their claim. Nor, for related reasons, is their failure to submit a District Attorney’s release a bar.
 

 Respondents would have us interpret and apply the various procedural requirements imposed on a claimant by the
 
 Mc-Clendon
 
 order as if those requirements were cast in stone and as if a claimant must somehow earn the right to redemption of his property by strict compliance with those procedures. Such a strict approach is unwarranted.
 

 While the
 
 McClendon
 
 order sets forth a useful, more lenient alternative to the unconstitutionally burdensome procedure imposed by the Administrative Code, it is not the last word on the subject. Our role, in assessing the adequacy of a demand made under the authority of
 
 McClendon,
 
 is not as limited as it would be if we were interpreting a statute. A judicial order stands on quite different footing. First, a decision of a Federal District Court is not binding authority in this Court. More fundamentally, although the
 
 McClendon
 
 order was intended to have prospective injunctive effect, its primary object was the resolution of the dispute between those particular parties and it was framed to address the concerns raised by their circumstances. We are free, in a case arising under different circumstances, to determine whether some other procedure may be sufficient.
 

 Furthermore, the purpose of the
 
 McClendon
 
 procedure is to make it easier for claimants to retrieve property taken from them, not to place procedural obstacles in their way. The core principle of the Second Circuit’s
 
 McClendon
 
 decision is that, although the government may seize and hold a citizen’s property for a variety of reasons in connection with a criminal or related proceeding, once those proceedings have terminated or it is determined that the property is not related to or is otherwise not needed for those proceedings, due process requires that the property be returned upon demand unless the government can establish a new basis for its detention. The order implementing the Second Circuit’s decision should be construed with that principle in mind. Thus, the procedural requirements imposed on claimants by that order, to the extent that they impede claimants’ due process right to return of their property, ought to be justified by some countervailing State interest and strictly applied only where that interest is implicated.
 

 From that perspective, it makes little sense to bar
 
 *58
 
 petitioners’ claim on timeliness grounds. The purpose of limiting the period for making a demand to 90 days, after which the property clerk can transfer the property or its proceeds to the Pension Fund, is to free the property clerk from the burden of maintaining custody of the property indefinitely
 
 (see, Moreno v City of New York,
 
 69 NY2d 432, 436,
 
 supra).
 
 That interest was not compromised in this case.
 

 The initial in-person demand of petitioner DeBellis, coupled with the written demand of his attorney, clearly put the property clerk on notice that these claimants were interested in recovering the property in his custody as soon as possible. Though the demands may have been technically premature, that was not the reason given for denying the request. Instead, petitioners were informed that the property could not be released until a tax levy was satisfied. Upon satisfaction of the levy approximately 11 months later, petitioners immediately renewed their demand. Respondents contend that this was too late, and that petitioners should have made the demand 8 to 10 months earlier at a time when they knew and had informed petitioners that it could not be honored because of the pending tax levy. Nowhere do respondents explain what purpose might have been served by such a futile request. Nor do respondents contend that they had already disposed of the property or, indeed, that they could have done so during the pendency of the tax levy. Thus, respondents’ refusal to honor petitioners’ request on timeliness grounds was without basis.
 

 Similarly, the absence of a District Attorney’s release in this case cannot justify respondents’ refusal to return the property. The purpose of requiring a District Attorney’s release is apparent when a criminal proceeding related to the property is still pending. The pendency of such a proceeding is prima facie justification for its detention by the government, and it is reasonable to require the claimant to establish the contrary by obtaining a release from the District Attorney.
 

 Once all criminal proceedings related to the property have terminated, however, as was the case here, the government’s presumptive right to detain the property no longer exists. In such cases, the rationale of the
 
 McClendon
 
 decision requires that any further detention be justified by a new predicate, such as a forfeiture proceeding or perhaps the initiation of further criminal proceedings.
 

 Thus, although the
 
 McClendon
 
 order generally requires a District Attorney’s release, it would be inconsistent with the
 
 *59
 
 due process underpinnings of the decision to allow the District Attorney to block the return of the property by simply refusing to issue a release in a case where all criminal matters to which the property is relevant have terminated. The inconsistency is especially apparent in this case, where the District Attorney apparently refused to release the property because petitioners could not provide satisfactory proof of ownership. The point of the
 
 McClendon
 
 decision was precisely to relieve claimants of that burden. If the District Attorney can effectively block return of the property on such grounds, then
 
 McClendon
 
 accomplished little more than transferring that arbitrary power from the property clerk to the District Attorney.
 

 For these reasons, we conclude that a claimant’s failure to produce a release cannot stand as a bar to his claim where, as in this case, the District Attorney refuses to issue a release sought by the claimant and fails either to initiate a timely forfeiture proceeding or to offer a valid reason for continued retention of the property, such as the pendency of further relevant criminal proceedings. Where the District Attorney takes neither step, proof that a demand for a release was made on the District Attorney is sufficient to satisfy the claimant’s burden.
 

 Respondents’ final argument is that petitioners agreed to provide proof of ownership as part of their plea agreements. They rely on a statement by petitioner Lopes’ attorney following the entry of Lopes’ plea to the effect that the Assistant District Attorney had agreed to return the property upon proof of ownership satisfactory to her. This statement, however, is too ambiguous to establish a waiver of petitioners’ rights under
 
 McClendon
 
 — it may have meant, for example, only that the District Attorney would not consider a forfeiture proceeding if petitioners could present such proof. At most, the statement is evidence that the Assistant District Attorney and Lopes’ attorney in the criminal proceeding believed that the District Attorney had control over whether the property would be returned. That erroneous belief does not bind Lopes in this proceeding. In any event, the statement by Lopes’ attorney would not bind petitioner DeBellis, who has an independent right to the return of the property.
 

 For the foregoing reasons, we conclude that petitioners made timely and sufficient demands for the return of their property.
 

 
 *60
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . In
 
 Moreno v City of New York
 
 (69 NY2d 432), we held that the section providing for disposition of property by the property clerk after three months did not extinguish the owner’s right to claim the property pursuant to a common-law replevin action. Instead, that provision "simply fixes the point at which the property clerk may be relieved of the responsibility of retaining the moneys in custody, and provides for the transfer of the money from one fund to another at the termination of the statutory period.”
 
 (Id.,
 
 at 436.)
 

 [2]
 

 . The Appellate Division also held that petitioners were not required to serve a notice of claim pursuant to General Municipal Law § 50-e as a procedural prerequisite to this proceeding. That holding is not challenged on this appeal.